OPINION OF THE COURT
John B. Nesbitt, J.
This case continues the recent judicial exegesis of section *631 383-c of the Social Services Law regarding revocation of judicial surrenders for adoption. The relevant facts are uncomplicated and undisputed. In September of 2000, Katherine W. appeared before a Judge of the Wayne County Family Court and, consistent with the requirements of section 383-c (1), surrendered her son, William, to the Department of Social Services for the purpose of adoption. Pursuant to subdivision (5) (c), the surrender instrument signed by Ms. W. stated that the surrender became final and irrevocable immediately upon signing.
Relevant for present purposes is the fact that the surrender instrument contained language reciting the provisions of subdivision (5) (b) (ii) and (iii) in pertinent part as follows:
“[T]hat the parent is giving up all rights to have custody, visit with, speak with, write to or learn about the child, forever, unless the parties have agreed to different terms * * * [as] written in this surrender.
“[T]hat the child will be adopted without the parent’s consent and without further notice to the parent, and will be adopted by any person who the agency chooses, unless the surrender paper contains the name of the person or persons who will be adopting the child.” (Emphasis added.)
The underscored language inspired a section in the surrender instrument for insertion of “terms and conditions agreed upon by all the parties.” That section stated by typed addition that “William will be adopted by his foster parents, Shannane and Mariano Zanghi; Zanghis will provide me with a yearly photograph at Christmastime.”
Approximately three months after the surrender proceeding in Family Court, the Department of Social Services issued Ms. W. a notice pursuant to subdivision (6) (c), which provides:
“In any case in which the authorized agency determines that the persons specified in the surrender will not adopt the child, the agency promptly shall notify the parent thereof, unless such notice is expressly waived by a statement written by the parent and appended to or included in such instrument.”
The notice sent by the Department notified Ms. W. of the fact that the individuals named in the surrender document would not be adopting the child, that the surrender nevertheless remained in effect allowing the child to be adopted without Ms. W.’s further consent absent a court order revoking the sur *632 render, and that Ms. W. could make application for such revocation to the Family Court.
Thereafter, Ms. W. appeared in Family Court in response to a petition by the Department of Social Services seeking continuation of foster care placement of William under article 10 of the Family Court Act, which was ordered upon consent and the required judicial findings. In conjunction therewith, Ms. W. moved for an order revoking the judicial surrender, enjoining the Department of Social Services from proceeding with any adoption, and granting her liberal visitation. That application was supported by affidavit of Ms. W. stating, among other things, that Ms. W. had met with the erstwhile adoptive parents at least 12 times prior to the judicial surrender, that Ms. W.’s belief that they were good role models for her child induced the surrender, and that she would not have surrendered the child but for her approval of the adoptive parents, as evidenced by the specification of their identity in the surrender instrument.
The Department of Social Services opposes Ms. W.’s application, arguing that the surrender instrument states that it is final and irrevocable, and thus Ms. W. lacks standing to seek revocation. Apart from the express limitation in the instrument barring revocation, the Department relies upon section 383-c of the Social Services Law, which provides at subdivision (6) (d):
“Nothing contained in this section shall bar actions or proceedings brought on the ground of fraud, duress or coercion in the execution or inducement of a surrender. No action or proceeding may be maintained by the surrendering parent or guardian for the custody of the surrendered child or to revoke or annul such surrender except as provided herein.”
Inasmuch as the basis for revocation asserted by Ms. W. is other than fraud, duress or coercion and is not one otherwise provided in statute, the Department argues that her application perforce must fail.
On a surface level, extant decisional law conflicts as to the legal status and ramifications of a judicial surrender expressly anticipating adoption by named individuals when such adoption fails to consummate. (Compare Matter of Christopher F., 260 AD2d 97 [3d Dept 1999], Matter of Shannon F., 175 Misc 2d 565 [Fam Ct, Richmond County 1998], with Matter of Beauford v Monroe County Dept. of Social Servs., 180 Misc 2d 669 *633 [Fam Ct, Monroe County 1999].) But a unity of judicial opinion emerges when examining the factual and procedural contexts of these cases and their differences become one of characterization rather than result.
The threshold issue is whether a judicial surrender can be revoked upon other than the statutorily specified grounds of fraud, duress and coercion. Section 383-c of the Social Services Law expressly provides for conditional judicial surrenders. Section 383-c (1) allows a method by which “[t]he guardianship of the person and the custody of a child in foster care under the age of eighteen years may be committed to an authorized agency.” That method is “by a written instrument” known as a “surrender.” {Id.) Such instrument “shall be upon such terms and subject to such conditions as may be agreed upon” (Social Services Law § 383-c [2]) by the surrendering parties and agency, as well as ultimate judicial approval. There are no legislatively disqualified terms and conditions subject to agreement, and indeed the statute expressly sanctions those relating to the biological parents’ postsurrender access to or information about the child, and the identity of the prospective adoptive parents. {See Social Services Law § 383-c [3] [b]; [5] [b] [hi].) Such a qualified surrender, in juristic argot, is known as an open or conditional surrender, distinguished from the unconditional surrender, where all ties to the adopted child are severed. So much is undisputed by decisional authority and the parties in this case. Opinion divides, however, as to the consequences and concomitant remedies for failure of performance of conditions set forth in a surrender instrument.
One view, and that put forward by the Department and Law Guardian in this case, holds that judicial surrenders by their terms and statutory design are final and irrevocable when made, except as otherwise statutorily dictated. This view would presumably allow courts to specifically enforce those conditions that are capable of specific enforcement, such as visitation or informational privileges, but not permit revocation of a surrender based upon nonperformance of conditions not allowing of specific enforcement, such as failure of adoption by the identified adoptive parents. This view proceeds from the statutory limitation upon the grounds for revocation to fraud, duress or coercion in the execution or inducement of a surrender. For a court to expand the grounds for revocation, it is argued, would be tantamount to judicial legislation — a rewriting of the statute in a way the Legislature presumptively declined to do.
In the case of a failure of condition not capable of specific performance, as here, where the identified adoptive parents *634 decline to adopt, the Department and Law Guardian argue that the condition becomes void, but the surrender nonetheless remains operative without such limitation. In the instant case, this would authorize the Department to proceed with the child’s adoption by individuals other than those specified in the surrender instrument. Put another way, conditions bind parties to a judicial surrender only to an extent they are capable of specific enforcement; otherwise, they are of no legal force and effect, merely precatory recitals by the surrendering parents.
This Court respectfully disagrees based upon the text, structure and relevant history of section 383-c of the Social Services Law. The only expressed statutory ramification of a failure of condition is that relating to the situation where the authorizing agency determines that the persons specified will not adopt the child. In such case, “the agency promptly shall notify the parent thereof, unless such notice is expressly waived.” (Social Services Law § 383-c [6] [c].) The statute does not state what, if anything, may ensue upon such notice.
The statutory text neither provides for automatic elimination of the surrender limitation regarding adoption by particular individuals, nor specifies that the surrendering parent may proceed to seek revocation of the surrender. Arguably, a court could simply stop there, for no such, or for that matter any, consequences being stated, none should be judicially implied. To hold otherwise, it follows, would traduce Justice Jackson’s often-quoted observation that “[b]y and large, I think our function was well stated by Mr. Justice Holmes: We do not inquire what the legislature meant; we ask only what the statute means.’ ” (Schwegmann Bros. v Calvert Distillers Corp., 341 US 384, 396-397 [1951] [Jackson, J., concurring]; see also Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum L Rev 527, 538 [1947].) Indeed, the Department in this case urges that the failure of the Legislature to provide a right to seek revocation must be construed as purposeful, relying upon Pajak v Pajak (56 NY2d 394 [1982]). Pajak held that the failure of the Legislature to provide mental illness among the statutory defenses to a divorce action based upon cruel and inhuman treatment precluded judicial recognition of the defense in that context. The Pajak majority invoked the hoary maxim of statutory construction expressio unius est exclusio alterus — literally, the expression of one is exclusion of the other — legislatively canonized in New York in McKinney’s Consolidated Laws of NY, Book 1, Statutes § 74. (See A. Scalia, A Matter of Interpretation: Federal Courts and the Law, at 26 *635 [1997].) For the Department here to be consistent in its analysis, however, it must concede that as section 383-c does not provide a right to seek revocation of the judicial surrender upon failure of identified adoptive parents to adopt, neither does it provide that such identification in the surrender then becomes a nullity. Indeed, such would be interdicted by clear negative implication from the express wording of subdivision (5) (b) (iii), allowing adoption by any person the agency chooses, unless the names of the adoptive parents are stated in the surrender instrument. The result of this literal reading of section 383-c of the Social Services Law would leave a judicial surrender after notice of nonadoption by the identified adoptive parents in unassailable limbo, except, perhaps, by stipulated revocation by all parties to the surrender. The “plain meaning” rule of statutory interpretation will not apply where a reading gives rise “to absurd or mischievous consequences or thwart a manifest purpose.” (See Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons About how Statutes Are to be Construed, 3 Vand L Rev 395, 403 [1950].) In such cases, a contextual approach directs that “courts will construe the details of an act in conformity with its dominating general purpose, will read text in light of context and will interpret the text so far as the meaning of the words fairly permits as to carry out in particular cases the generally expressed legislative policy. (Securities & Exch. Commn. v Joiner Leasing Co., 320 US 344, 350-351 [1943] [Jackson, J.].)
The manifest legislative purpose in allowing conditional surrenders is not obscure:
“In order to encourage the parent to sign a Judicial Surrender whereby the parents give up parental rights, was the inclusion by the legislature of the ability to place conditions in the Surrender itself. Conditional Surrenders have become more popular because it not only does away with the need for a full-blown trial whereby the state is attempting to prove either abandonment or permanent neglect, mental illness or mental retardation against the parent, but also permits the parent to continue some kind of contact with the child after the adoption, or permits the birth parent to specify the person who will adopt.” (Joseph R. Carrieri, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 52A, Social Services Law § 383-c, 2001 Supp Pamph, at 291.)
*636 The statutory inducement for a parent to execute a conditional surrender would diminish, if not evaporate, once a surrendering party knows that the conditions are unenforceable, yet the surrender nevertheless remains irrevocable. The courts in Matter of Christopher F. (supra) and Matter of Shannon F. (supra) construed section 383-c to avoid so undermining the legislative purpose, employing time-honored methods of statutory construction. First, they eschewed as “senseless” a reading of the statute that conferred the right upon a surrendering parent to specify the adopting parents, yet deprive them of any recourse or remedy for noncompliance. (See Matter of Christopher F., 260 AD2d at 100; see also Matter of Shannon F., 175 Misc 2d at 568.) Second, they found such a remedy implied in the notice requirement triggered by a nonadoption, as well as the word “revocation” appearing in the sectional caption containing such requirement. (See Matter of Christopher F., 260 AD2d at 99-100; Matter of Shannon F., 175 Misc 2d at 568.) The notice requirement, said the courts, was purposeless unless the Legislature meant to trigger the ability of the biological parent to revoke the revocation. Although neither the Court of Appeals nor the Fourth Department has addressed this issue, this Court is persuaded that these decisions are well reasoned and correctly decided. '
Matter of Beauford (supra), cited by the Department, is not to the contrary on these issues. The court in Beauford did not hold that an application to revoke a judicial surrender would not be granted where the identified adoptive parents did not adopt, but only that until revoked, a judicial surrender barred a proceeding seeking custody of the child so surrendered. Beau-ford takes issue with Shannon F.’s seeming characterization of the surrender in such cases as void upon notice of nonadoption. In this Court’s view, the fact that the Legislature provided for notice of nonadoption, but did not state that the surrender was then void, implies that the biological parents, at their election, may or may not seek revocation. If they decline, the conditional surrender nevertheless remains extant according to its terms. (But cf. Matter of Christopher F., 260 AD2d at 101 [in the absence of prompt motion to revoke after statutory notice, “the surrender remains extant and will provide a proper basis for an adoption”].) Beauford is consistent with Shannon F.’s central holding that an application to revoke based upon non-adoption by the individuals named in the surrender instrument must be granted, much like a right of recision based upon the inability of a party to perform a contract after it is made. (17 Am Jur 2d, Contracts, § 506 [1964].)
*637 By way of coda, this Court is mindful of the Law Guardian’s well-stated admonition that contract analysis in the adoption context must be applied with great caution. However, the Legislature in enacting section 383-c of the Social Services Law allowed negotiation of terms and conditions for insertion in surrender instruments. An agency may decline to accept a surrender subject to conditions, and particularly may decline to accept a surrender identifying adoptive parents. But it may not induce, or at least accept, a surrender subject to such limitations without allowing biological parents an appropriate and meaningful remedy for noncompliance. That remedy under the facts of this case is revocation of the judicial surrender.
The motion of Katherine W. to revoke her judicial surrender of William W. is hereby granted, and the matter shall be recalendared to consider other consequent relief requested by movant.