OPINION OF THE COURT
David M. Brockway, J.
This case presents yet another in the apparently ongoing struggle our courts have had over the years in attempting to construe certain legislative provisions regarding surrenders of children. Before this court are petitions filed by the petitioners seeking vacatur of previously-executed judicial surrenders involving the two subject children.[2] The facts of this matter are simple, and were stipulated to by the parties: on November 22, 2004 each petitioner executed a valid judicial surrender regarding each of the subject children;[3] that the aforementioned surrenders were conditioned upon the Ls adopting the subject children;[4] that the Ls subsequently failed and refused to adopt the subject children; and that such failure was a material breach of the condition contained within the judicial surrenders. The court is called upon to determine if a hearing is required before it can act upon the instant petitions. In answering this question, the court must briefly discuss Social Services Law § 383-c as it provides for surrenders in general and must also note as appropriate that some applicable portions of Social Services Law § 383-c underwent significant legislative amendments in 2002[5] and thus control here. Further amendments, obviously *566 not controlling, but later referred to herein as possibly instructive, were made again in 2005.[6]
Social Services Law § 383-c (1) provides that “[t]he guardianship of the person and the custody of a child in foster care under the age of eighteen years may be committed to an authorized agency[7] by a written instrument which shall be known as a surrender . . . .” Moreover, such surrenders can be conditional. In this regard, Social Services Law § 383-c (2) provides that “the instrument shall be upon such terms and subject to such conditions as may be agreed upon by the parties thereto . . . .” Such conditions must be contained within the instrument of surrender pursuant to Social Services Law § 383-c (5) (b) (ii). Finally, Social Services Law § 383-c (5) (b) (iii) requires that if, as a condition of the surrender, the child is to be adopted by a specific person or persons, the instrument of surrender shall contain the name of that person or persons,[8] otherwise the child may be adopted by any person the agency chooses.
Although involving a case and appeal heard before the 2002 amendments to section 383-c, the Third Department’s decision in Matter of Christopher F. (260 AD2d 97 [3d Dept 1999]) is factually analogous to the case at bar. Christopher F. involved a petitioner who sought, inter alia, to revoke the judicial surrender after the foster parents who had been named in the surrender instrument failed to adopt the subject child. The Appellate Division, by Justice Mercure, in overruling the lower court, held that:
“[T]he plain language of Social Services Law § 383-c (2) and (5) (b) (iii) mandates the conclusion that, in enacting Social Services Law § 383-c, the Legislature intended that biological parents be permitted to establish terms for and impose conditions upon the adoption of their children, including the right to select the proposed adoptive parent or parents, subject only to the advance approval of the court. Further, the statute makes express provision for the very circumstance presented here, i.e., ‘that the persons specified in the surrender will not adopt the child’ (Social Services Law § 383-c [6] [c]) and *567 requires that the biological parent be given notice in such event (Social Services Law § 383-c [6] [c]).” (Id. at 99.)
The appellate court reasoned that to give full force and effect to the statutory scheme set up under section 383-c, parents must be given recourse when conditions that are made an explicit part of a surrender fail to materialize and notice of said fact is provided for (id. at 100, citing Matter of Shannon F., 175 Misc 2d 565, 568 [1998] [holding that when, prior to adoption, the person specified in the surrender cannot, or will not, adopt the child, the instrument of surrender is a nullity]; see also, Matter of William W., 188 Misc 2d 630 [2001] [finding that revocation of judicial surrender is proper when named parties in the surrender refuse to adopt subject child]). The court went on to state that “[w]here, as here, a parent who receives a notice pursuant to Social Services Law § 383-c (6) (c) promptly moves to revoke the surrender, the application should be granted” (Christopher F. at 101).
As noted, however, after the holding in Christopher F., the Legislature in 2002 modified Social Services Law § 383-c (2) (regarding certain terms of a surrender), Social Services Law § 383-c (5) (c) (regarding provisions to be contained in judicial surrender forms) and Social Services Law § 383-c (6) (c) (regarding the effects of surrender and revocation). The amendment to subdivision (2) in 2002 affected details not applicable here. The latter two provisions were amended more significantly, though, at least as apply here. In relevant part, Social Services Law § 383-c (5) (c) (ii), as added, and (6) (c), as amended, in 2002, now provided that where there was any substantial failure of a material condition of a surrender,
“the authorized agency shall file a petition on notice to the parent and law guardian ... in order for the court to review such failure and, where necessary, to hold a hearing; provided, however, that, in the absence of such a filing, the parent and/or law guardian for the child may file such a petition at any time prior to the adoption.”
In the case sub judice, the Department urges this court to construe the amended Social Services Law § 383-c as requiring the court to now hold a hearing to determine if the surrenders here continue to be in the best interests of the subject children. In this apparent case of first impression, the court is unpersuaded by the Department’s argument that a “best interests” *568 (or any other) hearing be held, and finds no language in the aforementioned statute which would mandate such a result. Moreover, this court can find no reported decisions discussing the parameters of the “hearing” authorized by section 383-c (5) (c) (ii). Further, a review of the legislative history and legislative memorandum in support accompanying the 2002 amendments do nothing to illuminate what was contemplated by the Legislature in this regard. The post-2002 commentaries to section 383-c authored by Joseph R. Carrieri address the “hearing” language by pointing out that
“[w]here there is a substantial failure of [a] material condition in the judicial or extrajudicial surrender, the court possesses continuing jurisdiction to re-hear the matter upon the filing of a petition by the authorized agency, the birth parent, or the law guardian for the child or whenever the court deems it necessary to hold a hearing” (Carrieri, 2002 Practice Commentaries, McKinney’s Cons Laws of NY, Book 52A, Social Services Law § 383-c, at 110).
However, the commentator provides little discussion (nor can he, in this court’s opinion, given the vague statutory reference to a “hearing”) regarding what issues the court might “rehear” or what would likely provoke a court to deem it “necessary” to hold a hearing.[9] Even were one to get past this issue, Carrieri points out yet further failings in the amended statute:[10] “However, amended Section 383-c does not delineate or spell out what form the hearing will take in the event the court deems it necessary to hold such a hearing. For example, who has the burden of proof, what dispositional alternatives may the court determine after hearing the facts [sic]” (Carrieri, 2002 Practice Commentaries, McKinney’s Cons Laws of NY, Book 52A, Social Services Law § 383-c, at 111). Perhaps the provision of a hearing is simply to address questions of fact surrounding the condition(s) and/or breach thereof: is it “substantial”?; is it “material”?; have the proper parties been noticed?; is the petitioner who is seeking the revocation an appropriate party or statutorily-authorized to do so?; are the birth parents nowhere *569 to be found?; did the birth parent(s) somehow cause the adoptive parent(s) such grief as to cause them to renege on the planned adoption as provided for in a condition? Is there now to be a de novo examination as to what would be in the best interests of the child(ren) at this moment in time? Is it to be left totally to a particular court’s discretion as to what, if anything, might be thrown into the crevice now created, so as to make it a chasm?
Being thus unguided, the plain language of the statute must control this court’s decision (see, Rosner v Metropolitan Prop. & Liab. Ins. Co., 96 NY2d 475 [2001]). What is more, a court’s role is not to inquire or create language as to what the Legislature might have meant (see, Schwegmann Brothers v Calvert Distillers Corp., 341 US 384, 396-397 [1951]). This court finds the plain placement and language of the statute provides only that such a hearing is to provide a “review [of] such failure,” namely, if, in fact, there has been a failure (which is substantial) of a condition (which is material) and, if so, perhaps what gave rise to same. The court respectfully declines to adopt the Department’s reading of the statute which contemplates a broader interpretation of the statute, so as to now also include a hearing to determine whether the surrenders remain in the children’s best interests. Similarly, this court respectfully declines to adopt commentator Carrieri’s suggestion that the court would now, after some hearing, have the power to declare the surrenders valid and permit adoptions to be finalized with new and different adoptive parents than the ones named in the conditional surrenders.[11] Finally, a look at the 2005 amendments might be helpful but certainly not binding. The 2005 amendments, significant in number and scope, reveal that the Legislature did include “best interests” language in the revised section 383-c (3) (b). Pursuant to the revision, the court at the time of a judicial surrender must determine whether the terms and conditions agreed to by the parties are in the child’s best interests before approving the surrender. Similarly, the 2005 amendments include “best interests” language in Family Court Act § 1055-a (b) with respect to enforcement of any continuing contact or communica *570 tion conditions,[12] but similar language is not contained in Family Court Act § 1055-a (a) regarding a substantial failure to comply with a material condition of the surrender. Had the Legislature wanted to include such a review standard in Family Court Act § 1055-a (a) and/or Social Services Law § 383-c (5) (c) and (6) (c), it could easily have done so in the latest amendments; it did not.
Having thus limited the nature of the “hearing” provided by the statute at least then-controlling, the court concludes that a hearing is not necessary in the instant case, particularly given the stipulation of the parties. Conditional surrenders by their very nature require that some future event or events (agreed to by all the parties) transpire. Indeed, this is often an inducement the Department proffers in obtaining surrenders. Here, the contemplated adoption by the named individuals did not take place. No questions of fact are raised with respect thereto which would mandate any kind of a hearing thereon. To allow the Department to now attempt to supplant another adoptive family at this stage of the proceedings would violate the very terms in the surrenders to which the Department, the petitioners and the law guardian agreed.
Based upon the above, the court grants the petitions without need of hearing and holds that the surrenders are revoked. In so doing, the court notes that by essentially nullifying the surrenders, the parties are placed in their original positions, with no prejudice to the petitioners, the children or the Department. Here, the petitioners may file petitions for return of the children as provided by law. As for the Department, the children were and are in foster care as the result of the petitioners’ neglect and consents thereto, their later admissions to violations of terms imposed as part of the initial neglect dispositions and subsequent permanency hearings. Accordingly, it is hereby ordered that the petitions are granted and the surrenders executed on November 22, 2004 by T.R. and N.S. for the two children are revoked; and it is further ordered that the placements of the children and the terms and conditions reimposed on June 7, 2004 at disposition on the admitted violations are reinstated and shall remain in full force and effect pending the next permanency hearing; and it is further ordered that petitioners’ counsel remain assigned, as also is the law guardian, to assist and appear as necessary; and it is further ordered that the *571 Department shall promptly file a report on proper notice to necessary parties for a permanency review hearing to be held January 25, 2006 at 3:00 p.m.[13]

. Because of the unique factual scenario presented in the case at bar, the court, affording these pro se applications liberal construction, shall treat the custody petitions of the petitioners as petitions to vacate the surrenders of the subject children (see generally, Matter of Critzer v Mann, 17 AD3d 735 [3d Dept 2005]). Additionally, the court notes that throughout argument of these issues the parties and counsel have treated the petitions as motions to vacate the surrenders and they have been addressed as such in numerous court appearances and briefs filed by the parties.

. Both children were in foster care at the time.

. The surrenders provided in pertinent part that:
“I execute this surrender with the understanding that the Ls will be the adoptive parents of [the respective child]. I further understand that any contact I may have in the future with [the child] will be at the sole discretion of said adoptive parent. The adoptive parents [sic] failure to allow contact/visitation with [said child] will not constitute grounds to invalidate this surrender.”

. L 2002, chs 76, 663.

. L 2005, ch 3. References to statutes herein, unless otherwise noted, will be to those in effect in November 2004, at the time of the surrenders and filing of the petitions at issue.

. The authorized agency in this case is the Chemung County Department of Social Services, hereinafter the Department.

. As the surrenders in this case so provided.

. Carrieri does provide one illustration and posits that a court would “have the power to declare the surrender valid and permit an adoption to be finalized with new and different adoptive parents than the ones named in the conditional surrender. If this were not the case, what is the purpose of the hearing” (Carrieri, 2002 Practice Commentaries, McKinney’s Cons Laws of NY, Book 52A, Social Services Law § 383-c, at 111).

. Which failures continue unaddressed in the 2005 amendments.

. Such a reading would essentially overrule what this court otherwise views as the appropriate outcome in a matter such as Christopher F.

. New Family Court Act § 1055-a (b) is referred to in the new Social Services Law § 383-c (2) (b).

. The last review, held June 8, 2005 (as freed children) provided that the next permanency hearing be held prior to January 31, 2006.