[906 NYS2d 896]

In the Matter of S.D., an Infant.

Family Court, Queens County, August 23, 2010

**APPEARANCES OF COUNSEL**

*Ira Lawrence Eras*, for MercyFirst, petitioning agency. *Lois A. Milne*, for W.D. *Legal Aid Society* (*Tamara A. Steckler* and *Deborah M. Williams* of counsel), for the child.

**OPINION OF THE COURT**

Barbara Salinitro, J.

This case presents the novel question of whether a court may revoke a previously executed judicial surrender for failure of a condition precedent to an adoption contained therein and thereafter restore a biological parent's parental rights.

W.D. (hereinafter biological father), after having executed a conditional judicial surrender, dated November 24, 2003, with respect to his daughter, S.D. (hereinafter subject child), seeks a court order revoking the surrender for failure of the stated condition to be met prior to the finalization of his daughter's adoption and reinstating his parental rights.[1]

## Procedural History

On March 27, 1996, upon admission, the biological father was adjudicated to be the subject child's father. On November 24, 2003, the biological father executed a judicial surrender on the condition that the subject child's foster parents at the time, S.L. and E.L., adopt her; absent that condition's fulfillment, the surrender stated that the document would be deemed null and void. The court approved the surrender and committed the subject child to the guardianship and custody of the Administration for Children's Services.

On October 22, 2007, MercyFirst (hereinafter petitioning agency) filed a petition pursuant to Social Services Law § 383-c (5) for court review of the failed condition contained within the biological father's judicial surrender prior to the finalization of the subject child's adoption: to wit, the failure of the identified adoptive resource to adopt the subject child. The petition stated that the anticipated adoptive resource was no longer considered to be an adoptive resource; however, another adoptive resource had come forward and all parties were willing to consent to the subject child's adoption by the new resource.

On December 11, 2007, the parties appeared before the court. The parties informed the court that the subject child had left the L.s' preadoptive foster home approximately two years prior and had moved into her biological sister's residence. The biological father, the subject child, and the subject child's biological sister sought the subject child's adoption by her. The attorney for the child supported their position. On that same date, the court reviewed the condition's failure, determined that the condition as written had failed, and was satisfied that the new contemplated adoption plan was appropriate, taking into ac-

---

1. The biological father filed a petition seeking the subject child's custody.

count the best interests of the child. The court directed the petitioning agency to submit a settled order on notice to the biological father.

On January 14, 2008, the court executed the settled order which stated that there had been a failure of the substantial material condition within the biological father's judicial surrender and that, upon consent of the biological father and the attorney for the child, the judicial surrender remained valid for the purpose of the subject child's adoption by her biological sister. At some point thereafter, the subject child's biological sister was no longer a suitable adoptive resource for her and the petitioning agency began to work with the biological father as a discharge resource, ultimately supporting the goal of returning the subject child to him.

On July 6, 2010, the biological father filed a custody petition seeking an order awarding him custody of the subject child and on July 7, 2010, the petitioning agency filed another petition pursuant to Social Services Law § 383-c (5) for court review of the failed condition contained within the biological father's judicial surrender prior to the finalization of the subject child's adoption: to wit, the failure of the second identified adoptive resource, the subject child's biological sister, to adopt her. On July 12, 2010, at the conclusion of a permanency hearing, Referee Margaret Mulrooney found that the petitioning agency's goal of the subject child's return to her biological father was appropriate, considering the best interests of the child. On July 29, 2010, the petitioning agency, the biological father, and the subject child appeared before this court collectively seeking the same objective: that the court revoke the biological father's conditional judicial surrender, dated November 24, 2003, and the attendant order determining petition for review of substantial failure of material condition in conditional surrender, dated January 14, 2008, and reinstate the biological father's parental rights. On that day, the court pointedly questioned the subject child, now 17 years old, who unequivocally wished to live with her natural father. The court ordered the adoptive resource, the subject child's biological sister, to appear on August 19, 2010.

On August 19, 2010, the petitioning agency, the attorney for the child, the biological father's attorney, and the subject child appeared before the court. Although the court was provided with proof that the subject child's biological sister was served with a copy of the petition, she was not present in court on that date. Thus, the court deemed her failure to appear as a default

in the proceeding. The court questioned the subject child further regarding her wishes. The subject child credibly and candidly testified that she would not consent to be adopted by her biological sister, or anyone else for that matter. The subject child also testified that she wants to live with her biological father and that she identifies him, and no other man, as her father.

In support of the surrender's revocation and reinstatement of the biological father's parental rights, the parties argued that the subject child turns 18 years old in September of this year, that she does not consent to adoption, that no new adoptive resources have been located for her, that she has expressed a clear desire to live with her father, and that reestablishing her biological father's parental rights would have a huge emotional and psychological impact in the subject child's best interests.

On that same date, after having reviewed the condition's failure through testimony and argument, the court ruled that the substantial material condition within the biological father's surrender as amended by the attendant order determining petition for review of substantial failure of material condition in conditional surrender, dated January 14, 2008, had failed. The court reserved decision on the issues of the surrender's revocation and reinstatement of the biological father's parental rights.

## Discussion

### Revocation of Conditional Judicial Surrenders

The court's analysis begins with Social Services Law § 383-c which sets forth procedures for the transfer of guardianship and custody of a child in foster care under 18 years of age to an authorized agency through a surrender. (*See generally* Social Services Law § 383-c.) Section 383-c permits conditional surrenders. (*See* Social Services Law § 383-c [2] [a] ["(T)he (surrender) instrument shall be upon such terms and subject to such conditions as may be agreed upon by the parties thereto"], [b]; [5] [b] [iii].)

The statute requires that a conditional judicial surrender connected to a Family Court Act article 10 proceeding, such as is the case here, shall be executed and acknowledged before the Family Court that exercised jurisdiction over that proceeding and, where feasible, before the judge who last presided over that proceeding, whose approval is required after having decided

that the conditions are in the child's best interests. (*See* Social Services Law § 383-c [3] [a].) Section 383-c incorporates notice, petition filing, and hearing provisions[2] in the event of a substantial failure of a material condition[3] within a judicial surrender, such as the nonoccurrence of a named individual within a surrender to adopt a child. (*See* Social Services Law § 383-c [6] [c].) To that end, where a conditional surrender has been approved, the court must additionally inform a surrendering parent that, unless expressly waived, they are entitled to notice of a substantial failure of a material condition within the surrender, and the surrendering parent must keep the agency to whom they are surrendering their child apprised of their address. (*See* Social Services Law § 383-c [3] [b].)

Moreover, section 383-c prescribes that the surrendering instrument itself must incorporate language advising a surrendering parent about the effect of an executed surrender and about their rights, including the right to choose by whom their child will be adopted, and unless expressly waived, upon the nonoccurrence of a substantial failure of a material condition within their surrender preadoption, their right to notification by the foster care agency of a petition for court review of the failure, and where necessary, that a court conduct a hearing to decide if the condition failed. (*See* Social Services Law § 383-c [5] [b] [i], [ii], [iii]; [c] [i], [ii].) Section 383-c is silent as to the issue of a surrender's validity after a court finds that there has been a failure of a substantial material condition in the surrender.[4]

Trial courts have considered this question and some guidance is beginning to emerge. *Matter of Shannon F.* (175 Misc 2d 565 [Fam Ct, Richmond County 1998]) was the first court to analyze the subject. The *Shannon F.* court, appropriately referring to the issue as a case of first impression, undertook to determine

---

**2.** Family Court Act § 1055-a also sets forth the same notice, petition filing and hearing provisions in the event of a substantial failure of a material condition in a conditional surrender executed pursuant to section 383-c.

**3.** The statute has been amended over the years to address substantial failures of material conditions within conditional surrenders.

**4.** Section 383-c provides for revocation of judicial surrenders based upon the narrowly defined grounds of "fraud, duress, or coercion in the execution or inducement of a surrender" (Social Services Law § 383-c [6] [d]), and dictates that a surrender is considered a nullity under the following circumstances: (1) court disapproval of an extrajudicial surrender; (2) an extrajudicial surrender's revocation, within a prescribed period of time, sent to the court; and, (3) an extrajudicial surrender's revocation prior to an adoption's finalization. (*See* Social Services Law § 383-c [6] [c].)

whether to render a biological mother's judicial surrender a nullity since it was conditioned upon the children's maternal grandmother adopting the subject children, but prior to the adoption, the maternal grandmother died. (*See Shannon F.,* 175 Misc 2d at 565-568.) Following the maternal grandmother's death, the biological mother sought to have her surrenders annulled. (*Id.* at 566.) The *Shannon F.* court analyzed the facts and circumstances, noting that all parties, including the agency and the attorney for the child, had acted in good faith with the goal of the maternal grandmother's adoption being finalized when they consented to the conditional surrenders. (*Id.* at 567.) The *Shannon F.* court held that while conditional surrenders are final and irrevocable, they are final and irrevocable subject to the terms therein. (*Id.* at 568.) Thus, when a condition does not occur, the surrender cannot be finalized and "the surrender instrument is therefore a nullity." (*Id.*) The *Shannon F.* court noted that section 383-c requires that when an adoptive resource will not or cannot adopt a child, the surrendering parent must be notified, and opined that it would be unreasonable to interpret the statute as after notice, foreclosing the biological parents from pursuing curative measures. (*Id.*) Consequently, the *Shannon F.* court granted the natural mother's application to revoke her judicial surrenders. (*Id.* at 569.)

Almost a year and a half later, in *Matter of Beauford v Monroe County Dept. of Social Servs.* (180 Misc 2d 669 [Fam Ct, Monroe County 1999]), another Family Court touched upon, but never truly reached, the issue when it presented itself in the context of a custody proceeding. In *Beauford,* the natural parents of the subject children executed judicial surrenders with the condition that the paternal grandmother adopt the children. (*See* 180 Misc 2d at 670.) After the biological mother's claim that the biological father raped one of the subject children while in the care of the paternal grandmother and the commencement of a criminal prosecution against the natural father on that charge, the children were removed from the paternal grandmother's home, her foster care license was revoked, and she was determined to be an inappropriate adoptive resource for the subject children. (*See id.*) The *Beauford* court was called upon to rule on the paternal grandmother's subsequent custody petition. (*Id.* at 670-671.) In *Beauford,* the court dismissed the petition, finding that the court lacked authority to entertain the custody petition while the judicial surrenders stood unchallenged. (*Id.* at 671.)

In that same year, in *Matter of Christopher F.* (260 AD2d 97 [3d Dept 1999]), the Third Department held that where a parent receives notice pursuant to Social Services Law § 383-c (6) (c) of a failed condition precedent in his or her judicial surrender and that parent timely moves to revoke the surrender, the application should be granted. (*See* 260 AD2d at 101.) The *Christopher F.* court's facts were similar to the case at bar; in that, the biological mother voluntarily executed a judicial surrender regarding the subject child with the condition that named individuals would adopt him, but that condition was not realized after an incident occurred and the subject child was removed from the preadoptive parents' home who ultimately decided not to proceed with the adoption. (*See id.* at 98.) The *Christopher F.* court reasoned that revocation of the judicial surrender was proper where section 383-c's statutory scheme allowed a biological parent the right to choose who will adopt their child and afforded them notice when that condition failed, but did not provide a remedy. (*See id.* at 99-100.)

Nearly two years later, in *Matter of William W.* (188 Misc 2d 630 [Fam Ct, Wayne County 2001]), the biological mother surrendered her son through a conditional judicial surrender which specified that her son's foster parents at the time would adopt him. (*See* 188 Misc 2d at 631.) However, that condition never came to fruition and the natural mother moved for an order revoking her surrender. (*See id.* at 631-632.) The *William W.* court surmised that the legislature's provision for notice of the nonoccurrence of a material condition within a judicial surrender preadoption, and silence regarding the validity of the then-unfulfilled surrender, "implies that the biological parents, at their election, may or may not seek revocation." (*Id.* at 636.) In light of the fact that the biological mother elected to move for revocation of her judicial surrender, the *William W.* court granted her application. (*See id.* at 637.)

Finally, 4¹/₂ years later, in *Matter of T.R. v Chemung County Dept. of Social Servs.* (11 Misc 3d 564 [Fam Ct, Chemung County 2005]), the biological parents of the subject children executed judicial surrenders with the condition that a certain couple adopt them, but those persons subsequently refused to do so. (*See* 11 Misc 3d at 565.) Thus, the biological parents sought to vacate the judicial surrenders. (*See id.*) The *T.R.* court, characterizing the issue as a case of first impression, set forth to determine what type of hearing the amended section 383-c authorized, where necessary, after a failure of a judicial sur-

render's material condition. (*See id.* at 567-568.) The Chemung County Department of Social Services asserted that the hearing should decide if the surrenders continued to be in the best interests of the child, but the *T.R.* court declined to adopt the argument advanced and, in absence of legislative guidance, found that the hearing to which the statute referred was a hearing only to review the condition's failure. (*See id.* at 569.) In *T.R.*, the court decided that a hearing was unnecessary since there were no questions of fact, being that the condition as written was straightforward. (*See id.* at 570.) The *T.R.* court revoked the surrenders since the named persons did not adopt the subject children. (*See id.*)

In the case at bar, the biological father executed a judicial surrender with a condition precedent to adoption that the subject child, his biological daughter, be adopted by a specific adoptive resource. When that resource was no longer viable, with the biological father's and the attorney for the child's consent, the court ordered that the judicial surrender remain valid for the circumscribed purpose of the subject child's adoption by her biological sister. Given the fact that the subject child's biological sister is no longer a feasible adoptive resource, the parties now support discharge to the biological father and have made application for the surrender's revocation. Moreover, the subject child becomes 18 years old in September of this year,[5] she refuses to consent to adoption, no additional adoptive resources have been located for her, and she has evinced a strong desire to live with her father; therefore, the court finds that adoption would not be in the subject child's best interests. (*See e.g. Matter of Danielle Joy K.*, 60 AD3d 948 [2d Dept 2009]; *Matter of Kayshawn Raheim E.*, 56 AD3d 471 [2d Dept 2008]; *Matter of Samuel Fabien G.*, 52 AD3d 713 [2d Dept 2008]; *Matter of Marc David D.*, 20 AD3d 565 [2d Dept 2005].) The court, having already ruled on August 19, 2010 that the condition that a particular person adopt the subject child has failed, the judicial surrender as it is written is hereby null and void. Accordingly, the parties' collective application to revoke the judicial surrender and the attendant order determining petition for review of substantial failure of material condition in conditional surrender is granted.

---

**5.** Any child who is 14 years old or older must consent to their adoption. (*See* Domestic Relations Law § 111 [1] [a].)

Reinstating a Biological Parent's Parental Rights

Having determined that the biological father's judicial surrender, dated November 24, 2003, and the court's attendant order determining petition for review of substantial failure of material condition in conditional surrender, dated January 14, 2008, are revoked, the court must now proceed to the question of whether the court has the power to reinstate the biological father's parental rights.

At the outset, the court recognizes that, as of the date of the instant decision and order, there is no New York State statute that confers authority for the restoration of a biological parent's parental rights.[6] However, the court finds instructive recent legislation which takes effect in November of this year. (*See* L 2010, ch 343.) This new law will amend the Family Court Act[7] and the Social Services Law[8] to allow for the modification of dispositional orders where parents' rights were terminated and to restore parental rights where certain prerequisites are met. (*See* L 2010, ch 343.)[9] The new law dictates that a petition to

6. Statutes in states other than New York permit parental rights reinstatement after a surrender's revocation preadoption. (*See e.g.* Alaska Stat Ann § 47.10.089 [h] [upon good cause shown, by clear and convincing evidence, after a hearing, where in the best interests of the child and where surrendering parent is rehabilitated and able to provide for the child's "moral, emotional, mental and physical welfare"]; 705 Ill Comp Stat Ann 405/2-34 [through motion by Department of Children and Family Services regarding ward of the state and surrendering parent consents to rights reinstatement, when statutory conditions met, by clear and convincing evidence, after a hearing, where appropriate to reinstate]; Tenn Code Ann § 36-1-118 [by court notification of adoptive parents' failure to comply with procedural requirements or clear and convincing evidence that child should not be adopted, considering best interests of the child, and upon the surrendering parent's consent].)

7. Part 1-A will be added to Family Court Act article 6 which will include new sections 635, 636, and 637. Moreover, item (III) of clause (B) of subparagraph (viii) of paragraph (2) of subdivision (d) of Family Court Act § 1089 will be amended and a new item (IV) will be added. (*See* L 2010, ch 343.)

8. The section heading of Social Services Law § 384-b will be amended and a new subdivision (13) will be added. (*See* L 2010, ch 343.)

9. The new law amends the Family Court Act and the Social Services Law and states that where a dispositional order has been made after a permanent neglect adjudication, or guardianship and custody was committed to a foster parent or relative and that foster parent or relative failed to institute an adoption proceeding for the child within six months of the guardianship and custody order's entry, or if the foster parent or relative institutes an adoption proceeding but the petition is denied or dismissed, a petition to modify a disposition may be filed if: (a) the petition is filed more than two or more years after the order committing guardianship and custody; and, (b) the order com-

modify a disposition may be filed in limited circumstances and the petitioner has the burden of proof, by clear and convincing evidence, to demonstrate that parental rights reinstatement is in the child's best interests. (*See id.*) The new law further provides that if the court finds that the petitioner has met its burden of proof, the court may grant the petition, modify the termination of parental rights dispositional order, and transfer guardianship and custody to the biological parent although the findings of fact that formed the basis for the termination of parental rights adjudication remain. (*See id.*)

Moreover, the court considers as guidance the only two New York State cases, previously cited, which tackle the issue, both of which hold that the result of a judicial surrender's revocation is that the involved parties are placed in their original positions. (*See Matter of Christopher F.*, 260 AD2d at 101; *see also Matter of T.R.*, 11 Misc 3d at 570.) Although there appears to be no decisional law directly on point holding that a parent's rights may be reinstated after a judicial surrender is revoked, it is axiomatic that if the parties in this type of situation are placed in their original positions, that a biological parent's parental rights may be reinstated upon application, after taking into account the best interests of the child and barring any grounds precluding the restoration of parental rights. (*See e.g. Matter of T.R.*, 11 Misc 3d at 570 [holding that where the court revokes conditional surrenders for failure of the named individuals to adopt the subject child, the parties being placed in their original positions "may file petitions for return of the children as provided by law"].)

In the case at bar, the petitioning agency has explored the biological father as a discharge resource and planned with him toward that goal. On July 12, 2010, after taking testimony, Referee Mulrooney endorsed that goal. The court has questioned the biological father on one occasion and the subject child on two occasions and is satisfied, based upon clear and convincing

mitting guardianship and custody was based upon the death of both parents where no guardian of the child has been appointed, or one year prior to the petition's filing, the child was placed in the care and custody of the authorized agency because the parent or parent whose consent to the adoption is required is unable to do so by reason of mental illness or mental retardation, or the child is a permanently neglected child; and, (c) the petitioner or petitioners and the respondent or respondents consent to restoration of parental rights or if the petitioner or petitioners withhold consent, it is *without* good cause; and, (d) the Family Court has jurisdiction; and, (e) the child who is 14 years of age or older consents to the restoration of parental rights and has not been adopted. (*See* L 2010, ch 343.)

evidence, that the goal of the subject child's return to her biological father is in the best interests of the child, and that there is no proscription preventing reinstatement.[10] Given the fact that all of the necessary parties consent, and steadfastly advance, discharge of the subject child to the biological father which the court is convinced is likely to achieve permanency, this court reestablishes the biological father's parental rights. In sum, having been placed in their original positions prior to the conditional surrender's execution, the biological father's parental rights are reinstated.[11]

Adjudged, that the biological father W.D.'s judicial surrender, dated November 24, 2003, and this court's attendant order determining petition for review of substantial failure of material condition in conditional surrender, dated January 14, 2008, are revoked; and it is further, adjudged, that the biological father W.D.'s parental rights are reinstated; and it is therefore, ordered, that the subject child, S.D., is hereby discharged to her biological father, W.D.; and it is therefore, ordered, that the petitioning agency is directed to submit a settled order on notice to the biological father reflecting the spirit of this decision and order and, after execution, to record the order in the Office of the Clerk of the Court where the judicial surrender is recorded.

---

**10.** The court acknowledges that the biological father was not a named respondent in the abuse and neglect petitions which preceded his judicial surrender with respect to the subject child.

**11.** This opinion is by no means to be interpreted as permitting biological parents a second bite at the apple through the passage of time and circumstance in all instances where a conditional surrender may have run afoul, and courts need to continue to make their determinations on a case-by-case basis.