OPINION OF THE COURT
Erik S. Pitchal, J.
Now pending before the court are the petitions of Mercy First seeking review of a failed condition of a surrender of the parental rights by Ms. S. to her two children, MP and CP. For the reasons set forth below, the court holds that there has been a failure of a material condition of the surrenders and that the court has the authority to vacate the surrenders as a result. The court further holds that under the circumstances of this case, a hearing must be held for the court to determine whether vacatur of these surrenders is in the children’s best interests, with the burden on the parent to demonstrate that it is.
Procedural History
The children MP and CP are twins born in 2009. They were removed from their mother’s custody and entered foster care on or about January 4, 2010, pursuant to a petition filed by the *680 Administration for Children’s Services alleging that she had neglected them. The children have been in foster care ever since.
On or about June 20, 2011, the foster care agency Mercy First filed petitions seeking to involuntarily terminate Ms. S.’s parental rights to the children. Midway through that proceeding, Ms. S. filed applications to voluntarily surrender her rights to the children, based on two specified conditions. First, her surrender was conditioned on the children being adopted by their paternal great aunt, Ms. L., who was at the time their approved kinship foster parent. Second, the surrender was conditioned on Ms. S. having post-adoption contact with the children at least six times per year, as arranged between her and Ms. L., and that she receive the children’s report cards and photographs of them on an annual basis. Following an allocution, the court (Olshansky, J.) approved the surrenders on July 25, 2014.
Sometime after the surrenders were approved, a call was made to the Statewide Central Register concerning maltreatment by Ms. L. of children in her care. MP and CP were removed from her foster home, and by the end of February 2015, she had exhausted her administrative remedies to seek their return. Shortly thereafter, Ms. S. moved to have her surrenders of the children vacated based on a material failure of the first condition. In response, the agency argued that the application was premature, as Ms. L. still had the option of seeking a CPLR article 78 review of the administrative determination to remove the children from her care. In a written decision dated June 1, 2015, the court (Salinitro, J.) concluded that a material condition of the surrenders had failed, and directed the agency to file a formal petition pursuant to Family Court Act § 1055-a notifying Ms. S. of the failed condition and seeking court review.
On or about June 15, 2015, the agency filed the petitions as directed. They were assigned to the undersigned, and a conference was conducted on the record with counsel on August 6, 2015. At the conference, the agency renewed its argument that it was premature to conclude that a condition had failed, because by that date Ms. L. had filed an article 78 petition which was then pending in Supreme Court. All counsel also briefly stated their positions with respect to the legal remedies, if any, available to Ms. S. in the event the court were to determine that there has indeed been a substantial failure of a *681 material condition of the surrenders. The undersigned was provided counsel’s memoranda of law on this issue which had previously been submitted as part of Ms. S.’s initial motion to vacate the surrenders.[1] The court reserved decision.
Analysis
As an initial matter, the court rejects the agency’s assertion that there has not been a failure of a material condition of Ms. S.’s surrenders. First and foremost, the court is constrained from adopting the agency’s position by the law of the case. Judge Salinitro’s written decision finding that the removal of the children from Ms. L.’s home constituted a failure of a material condition is binding so long as the facts and circumstances remain substantially the same. Courts of coordinate jurisdiction should not overrule one another in the same case. (People v Evans, 94 NY2d 499, 504 [2000], citing Matter of Dondi v Jones, 40 NY2d 8, 15 [1976].) At the time of Judge Salinitro’s decision, Ms. L. had lost an administrative fair hearing seeking the return of the children and had not yet had her article 78 petition adjudicated. As far as the court is aware, that remains the basic posture of this case at the present time.
Moreover, as discussed with counsel during the August 6 conference, even if Ms. L. prevails in an article 78 proceeding— and even if the agency does not appeal such a ruling—the agency is still not required to consent to her as the adoptive parent. If the agency withholds its consent at that point, Ms. L. would have to pursue yet another administrative hearing and, if necessary, another article 78 petition. A surrender of parental rights may only be conditioned on the child being adopted by a specified person if the person is an approved adoptive parent. (Social Services Law § 383-c [2] [a].) The agency’s position that she might yet be the adoptive parent is predicated on a string of hypothetical events all coming true, a result which is highly speculative at best, and all the while, the children would remain in a state of legal limbo. In this case, an arm of the state disrupted the placement of the children with their intended adoptive parent. It is vaguely Kafkaesque for another agent of the state to assert that despite this disruption, the identified resource may yet still be in a position to *682 adopt the children. Either Ms. L. is going to adopt the children, or she is not. Under the circumstances of this case, it appears that the agency cannot consent to her doing so, and thus a material condition of Ms. S.’s surrender of parental rights has failed.
Given this failure, the heart of the matter before the court is what, if anything, can and should be done. The agency, supported by the Attorney for the Children, argues that the answer is: Nothing. In contrast, Ms. S. argues that under the statute, the court has the power as well as the obligation to revoke the surrenders once it has been demonstrated there has been a failure of a material condition.
The court agrees with the mother that Social Services Law § 383-c gives the court the authority to vacate a parental surrender when a material condition on which it is predicated has failed. While the agency argues that the plain meaning of the statute clearly prohibits judicial nullification of parental surrenders under any circumstances, the court finds that the statute is more ambiguous. The statute provides in relevant parts:
“The guardianship of the person and the custody of a child in foster care under the age of eighteen years may be committed to an authorized agency by a written instrument which shall be known as a surrender . . .
“[T]he instrument shall be upon such terms and subject to such conditions as may be agreed upon by the parties thereto and shall comply with subdivision five of this section; provided, however, that an authorized agency shall not accept a surrender instrument conditioned upon adoption by a particular person, unless such person is a certified or approved foster parent, where the permanency plan for the child is for the child to be adopted by that person or the agency has fully investigated and approved such person as an adoptive parent in accordance with applicable statute and regulations.” (Social Services Law § 383-c [1], [2] [a].)
“At the time that a parent appears before a judge or surrogate to execute and acknowledge a surrender, the judge or surrogate . . . shall inform the parent of the consequences of such surrender, including informing such parent that the parent is giving up all rights to have custody, visit with, *683 speak with, write to or learn about the child . . . The court shall determine whether the terms and conditions agreed to by the parties pursuant to subdivision two of this section are in the child’s best interests before approving the surrender. The judge or surrogate shall inform the parent that where a surrender containing conditions has been executed, the parent is obligated to provide the authorized agency with a designated mailing address, as well as any subsequent changes in such address, at which the parent may receive notices regarding any substantial failure of a material condition, unless such notification is expressly waived by a statement written by the parent and appended to or included in such instrument. The judge or surrogate also shall inform the parent that the surrender shall become final and irrevocable immediately upon its execution and acknowledgment. The judge or surrogate shall give the parent a copy of such surrender upon the execution thereof.” (Social Services Law § 383-c [3] [b].)
“(b) The instrument for a judicial surrender . . . shall state in plain language in conspicuous bold print on the first page . . .
“(ii) that the parent is giving up all rights to have custody, visit with, speak with, write to or learn about the child, forever, unless the parties have agreed to different terms pursuant to subdivision two of this section, and unless such terms are written in the surrender . . .
“(in) that the child will be adopted without the parent’s consent and without further notice to the parent, and will be adopted by any person that the agency chooses, unless the surrender paper contains the name of the person or persons who will be adopting the child; and
“(c) A surrender instrument for a judicial surrender also shall state in plain language in conspicuous bold print at the beginning thereof that the surrender becomes final and irrevocable immediately upon execution and acknowledgement, and that the parent cannot bring a case in court to revoke the surrender or to regain custody of the child. Where the parties have agreed that the surrender shall be subject to conditions pursuant to subdivision two of *684 this section, the instrument shall further state in plain language that:
“(i) the authorized agency shall notify the parent, unless such notice is expressly waived by a statement written by the parent and appended to or included in such instrument, the attorney for the child and the court that approved the surrender within twenty days of any substantial failure of a material condition of the surrender prior to the finalization of the adoption of the child; and “(ii) except for good cause shown, the authorized agency shall file a petition on notice to the parent unless notice is expressly waived by a statement written by the parent and appended to or included in such instrument and the child’s attorney in accordance with section one thousand fifty-five-a of the family court act within thirty days of such failure, in order for the court to review such failure and, where necessary, to hold a hearing; provided, however, that, in the absence of such filing, the parent and/or attorney for the child may file such a petition at any time up to sixty days after notification of the failure. Such petition filed by a parent or attorney for the child must be filed prior to the child’s adoption; and
“(in) the parent is obligated to provide the authorized agency with a designated mailing address, as well as any subsequent changes in such address, at which the parent may receive notices regarding any substantial failure of a material condition, unless such notification is expressly waived by a statement written by the parent and appended to or included in such instrument.” (Social Services Law § 383-c [5].)
“In any case in which the authorized agency determines that the persons specified in the surrender will not adopt the child or in any other case of a substantial failure of a material condition prior to the finalization of the adoption of the child, the agency promptly shall notify the parent thereof, unless such notice is expressly waived by a statement written by the parent and appended to or included in such instrument, and shall notify the court and the law guardian for the child within twenty days. In any such case, the authorized *685 agency shall file a petition on notice to the parent unless notice is expressly waived by a statement written by the parent and appended to or included in such instrument and law guardian in accordance with section one thousand fifty-five-a of the family court act, as applicable, within thirty days, except for good cause shown, in order for the court to review such failure and, where necessary, to hold a hearing; provided, however, that, in the absence of such a filing, the parent and/or law guardian for the child may file such a petition at any time up to sixty days after the notification of the failure. Such petition filed by a parent or law guardian must be filed prior to the adoption.” (Social Services Law § 383-c [6] [c].)
If the meaning of these provisions were plain, then the court would follow them to the letter. (See McKinney’s Cons Laws of NY, Book 1, Statutes § 91; Patrolmen’s Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208 [1976].) However, the statute is unclear because it provides for a proceeding to review a failed condition of a parental surrender but does not explicitly state what should happen upon the court’s determination that the condition has failed. (Matter of Bentley XX. [Eric XX.], 121 AD3d 209, 213 [3d Dept 2014].)
When a statute’s plain meaning is unclear, courts must implement the canons of statutory interpretation in order to surface the legislative intent. (See McKinney’s Cons Laws of NY, Book 1, Statutes § 91; Rankin v Shanker, 23 NY2d 111, 114-115 [1968].) The first canon of statutory construction is that there are no meaningless or futile statutory provisions. (See McKinney’s Cons Laws of NY, Book 1, Statutes § 144; Matter of Rouss, 221 NY 81 [1917]; Matter of Anderson v Board of Educ. of City of Yonkers, 46 AD2d 360, 365 [2d Dept 1974].) The legislature must have some intention or purpose for each provision it enacts. This court agrees with the Third Department that a provision of law that
“(1) gives biological parents the right to specify who will adopt their child, (2) limits their consent to the adoption accordingly, and (3) provides for notice to the biological parents if the adoption cannot be completed on those terms, but then deprives the biological parents of any recourse is senseless, and we decline to interpret Social Services Law § 383-c in such a fashion.” (Matter of Christopher F., 260 *686 AD2d 97, 100 [1999]; see also Matter of Shannon F., 175 Misc 2d 565, 568 [Fam Ct, Richmond County 1998] [voiding a surrender upon the failure of a material condition and holding statute would be “illogical” if it provided for notice of the failed condition but no relief].)[2]
Though certain amendments were made to section 383-c following Christopher F, those changes only strengthen the conclusion that the statute was meant to offer a parent some relief, as the amendments added the notice and hearing provisions in subdivision (6). (See Bentley XX., 121 AD3d at 214-215; Matter of T.R. v Chemung County Dept. of Social Servs., 11 Misc 3d 564 [Fam Ct, Chemung County 2005].)
The agency suggests that the only purpose behind the review provision in section 383-c (6) (c) is to notify the parties and the court that a condition has failed. If that were the case, a hearing would not be needed; if the legislature had only intended for there to be notice, it would have provided for notice only, and not a hearing. Indeed, elsewhere in the statute there is a separate provision for the court to have ongoing “reviews” of children who have been freed for adoption. (See generally Family Ct Act § 1089.) The permanency hearing statute requires the local social services district to provide various types of information to the court about a child who is freed for adoption, including efforts to expedite the adoption process and information about any adoption subsidy. (Family Ct Act § 1089 [c] [5] [ix].) If the legislature intended the court to be powerless to vacate a surrender upon the failure of a condition, it would have provided that the agency give notice to the court of such a failure in the context of a freed-child permanency hearing. Instead, the legislature provided for a separate hearing to be conducted upon the failure of a condition to a surrender. Courts must construe legislative enactments by harmonizing the vari *687 ous provisions of a statute with each other and with the general intent of the statute. (See McKinney’s Cons Laws of NY, Book 1, Statutes §§ 96, 98.) Doing so here, it is evident that the legislature intended for a hearing pursuant to section 383-c (6) (c) to offer the parent some relief.
Moreover, the legislature enacted certain amendments to section 383-c after the Third Department issued its ruling in Christopher R, but it did not include any language whatsoever that could be construed as denying the courts the power to vacate a surrender after a condition has failed. To the contrary, it added the provision requiring a petition and hearing when there has been a failure of a condition. “The Legislature is . . . presumed to be aware of the decisional and statute law in existence at the time of an enactment.” (Jensen v General Elec. Co., 82 NY2d 77, 86 [1993] [internal quotation marks omitted].) Given the Third Department’s clear interpretation of the statute in Christopher F. that the court may vacate a surrender upon a failure of a condition, and the non-action by the legislature to state otherwise when it amended that statute several years later, it must be that the Third Department’s assessment of legislative intent was correct. Thus, this court holds that the court has the authority after conducting such a section 383-c (6) hearing to vacate a surrender of parental rights conditioned upon a specified person adopting the child when the condition has failed.
Moreover, in this particular case, it is critical to note that in the court’s allocution of Ms. S. at the time of her surrenders, the court suggested that there would be the possibility that the surrenders could be vacated if the condition failed:
“So what we have here is an agreement, right, and in the agreement it says that Mercy First is agreeing that if you surrender you parental rights, they’re promising you that the children will only be adopted by Ms. L. and that you will have visitation . . . that sounds like a real definite promise like for sure . . . the problem is it’s not as—it’s not as much of 100 percent promise as it seems . . . [I]f for whatever reason Ms. L. can’t or won’t adopt, it doesn’t necessarily mean that the children will be returned to you. It means that it will come back to the Court again and you’ll be notified, but it’s not a sure fire guarantee.” (July 25, 2014 tr at 11-12.)
*688 Later, the judge added,
“[0]nce we all sign these—these agreements, there will be, effectively it will terminate your parental rights and the agreements will become final and irrevocable upon signing, and that means that under the law, you know, except for these two promises that are hanging out there, that they will be adopted by this particular person and that the visitation will continue.” {Id. at 18 [emphasis added].)
As the allocution judge pointed out, the irrevocability of the surrenders was limited by the conditions thereto. The surrenders would only become irrevocable upon the adoption condition being satisfied. That did not occur here. Thus, the court concludes that it would be unjust not to permit Ms. S. to seek vacatur, and for the court not to consider it in this case.
However, to the extent Ms. S. contends that the court must vacate the surrenders based solely on the failed condition, the court disagrees. That the court has jurisdiction to vacate the surrenders does not mean the court is obliged to do so upon the mere determination that a condition has failed. Firstly, there may be instances in which there has been a failed condition, but the parent, after being notified, does not appear in court to ask for the surrender to be vacated. It seems elementary that the court should consider whether or not the parent seeks vacatur in providing for this relief.
Here, of course, Ms. S. has indeed asked for the surrenders of MP and CP to be undone. Nevertheless, because the statute is ambiguous about what exactly should occur at the “hearing” called for in the statute, the court cannot conclude that the surrenders should be vacated automatically upon the parent’s application. Not all requests to vacate the surrenders are granted; courts must judge each case based on its own circumstances and record. (Matter of Crystalyn P., 40 AD3d 650 [2d Dept 2007]; Matter of Buhneing v Orange County Dept. of Social Servs., 282 AD2d 746 [2d Dept 2001].)
Moreover, the statute requires the court to determine, before approving a conditional surrender, whether the proposed conditions are in the child’s best interests. (Social Services Law § 383-c [3] [b].) It follows, then, that if the court has jurisdiction to vacate the surrender based on a failure of one or more of those conditions, the court also has the duty to ascertain whether doing so would be in the child’s best interests or not. It is the court, not the agency, that acts as parens patriae to do *689 what is in the child’s best interests. (Matter of Shinice H., 194 AD2d 444 [1st Dept 1993].)
Thus, it appears that the appropriate course of action is to conduct a hearing to determine whether Ms. S.’s surrenders of MP and CP should be vacated based on the children’s best interests. As the judge stated during the allocution here, when a condition fails “it will come back to the Court again and you’ll be notified, but it’s not a sure fire guarantee.” (July 25, 2015 tr at 12.) The clear implication is that upon a finding of a failed condition the court would consider a request to vacate the surrenders, but that such a remedy was not guaranteed. It also follows that the burden of demonstrating that vacatur is in the children’s best interests falls on the party seeking that relief, namely, the parent.
Conclusion and Order
The court concludes that it has the statutory authority to vacate Ms. S.’s surrenders of her rights to the children MP and CP.

. The court has reviewed the memoranda of Ms. Marcus for the mother dated March 24, 2015 and May 5, 2015; the memorandum of Mr. Rasso for the agency dated April 23, 2015; and the memorandum of Mr. Munn, the Attorney for the Children, dated April 28, 2015.

. The court is not persuaded by the reasoning in Matter of Beauford v Monroe County Dept. of Social Servs. (180 Misc 2d 669 [Fam Ct, Monroe County 1999]). That case was decided in the context of a custody petition brought by the children’s paternal grandmother. The grandmother had been the kinship foster parent for the children, and the parents conditioned their surrender of parental rights on the grandmother adopting them. Following an allegation of maltreatment of children in her care, the grandmother’s foster care license was revoked and thus she was no longer eligible to adopt her grandchildren. Evidently, the parents did not seek revocation of their surrenders and the case predated the hearing provision of Social Services Law § 383-c (6) (c). The court’s holding was predicated on the grandmother’s lack of standing to seek custody of a child freed for adoption.