Matter of L.S. (Diana A.) (2021 NY Slip Op 02085)





Matter of L.S. (Diana A.)


2021 NY Slip Op 02085


Decided on April 01, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 01, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Judith Gische
Jeffrey K. Oing Peter H. Moulton Manuel Mendez


Docket No. AS-24660/17, AS-24667/17 Appeal No. 12912 Case No. 2019-1128 

[*1]In the Matter of L.S., a Child Subject to an Adoption Surrender Proceeding, Diana A., Respondent-Appellant, Commissioner of Social Services of the City of New York, Petitioner-Respondent.



Respondent appeals from the order of the Family Court, New York County (Karen L. Lupuloff, J.), entered on or about October 4, 2018, which, after a hearing, granted the petition to the extent of finding that the child's best interests warranted converting the mother's conditional surrender into an unconditional surrender, and denied respondent mother's application to revoke her conditional judicial surrender of parental rights.




Law Office of Thomas R. Villecco, P.C., Jericho (Thomas R. Villecco of counsel), for appellant.
Law Offices of James M. Abramson, PLLC, New York (Stefan J. Williams of counsel), for respondent.
Dawne A. Mitchell, The Legal Aid Society, New York (Claire V. Merkine of counsel), attorney for the children.



OING, J. 


This appeal requires us to resolve an issue not previously addressed by this Court. When the person designated in a conditional judicial surrender as the adopting parent declines to adopt the child must the surrender be revoked upon the birth parent's application? The Family Court was unwilling to vacate the surrender given the undisputed toll on the child's well-being as a result of spending virtually her entire life in foster care. Instead, the court held a best interests hearing and determined that the mother's parental rights remain terminated, and converted her conditional judicial surrender to an unconditional one, which permitted the child to remain free for adoption. This issue pits the basic principle that a parent has a "fundamental liberty interest . . . in the care, custody and management" of his or her child (Santosky v Kramer, 455 US 745, 753 [1982]) against this state's statutory framework governing conditional judicial surrenders (see Social Services Law § 383-c[6][c]). That said, we, like the Family Court, are cognizant and sensitive to the mother's and child's needs. We conclude that the order of the Family Court should be reversed because the designated person to adopt is a fundamental condition precedent to a surrender such that the person's declination mandates its revocation upon the birth parent's prompt application.
Appellant-mother Diana A. (mother) and nonparty Nathaniel S. (father) are the unmarried parents of LS, who was born on December 15, 2004.[FN1] She is currently 16 years old. On November 12, 2009, when LS was nearly five years old, the Administration for Children's Services (ACS) filed neglect petitions against the mother and the father alleging that they neglected LS by, inter alia, inflicting excessive corporal punishment, abusing drugs, and failing to pick her up from school. On March 1, 2010, the Family Court entered findings of neglect against them based on their admissions to the petitions' allegations. At the May 2010 disposition, the Family Court placed LS with ACS, and directed the mother and the father to attend counseling, complete a mental health evaluation, and attend parenting classes. By 2015, LS had resided in 8 to 10 foster homes. Since 2015, LS resided at the [*2]Edenwald Center, a residential treatment facility that serves children with serious behavioral and cognitive difficulties. It is managed by the Jewish Child Care Agency (JCCA). At Edenwald, LS received services that included group therapy, school counseling, medication management, educational services, recreational services, medical and psychiatric services, and independent living skills as she gets older.
On July 19, 2016, over six years after the neglect findings, JCCA filed a petition to terminate the mother's and the father's parental rights to LS based on the 2010 permanent neglect finding. By that time, LS was five months shy of her twelfth birthday and she had spent virtually her entire life in foster care and facilities for troubled youths. The fact-finding hearing commenced on December 8, 2016. On October 30, 2017, after several hearing days and continuances spanning several months, the attorney for the child (AFC) stated that "I would support a goal of adoption this time based on [LS's] length of time in care and the fact that the paternal grandmother who is sitting in the back of the courtroom is ready and willing to . . . be an ongoing resource for her granddaughter." Upon the Family Court's inquiry of the parents' willingness to a conditional judicial surrender (surrender), the mother's and the father's counsel informed the court that they wanted to execute surrenders to LS. Both executed their respective surrenders before the court. We focus only on the mother's surrender, and the Family Court's disposition of it because the father has not appealed the ruling concerning his surrender.
The mother's surrender incorporated Attachment A, which specifically provides that she "agree[s] that the surrender of guardianship and custody of [LS] is subject to" her conditions. As is relevant to this appeal, the mother consented to surrender her parental rights to LS on the condition that LS's paternal grandmother (grandmother) adopt her. It further provided that the mother would be notified if there was a substantial failure of a material condition set forth in the mother's surrender prior to LS's adoption, and that a judicial hearing would be held to review the failure. Attachment A also provided that any enforcement of the agreement after the child's adoption would be determined by a best interests hearing pursuant to Domestic Relations Law § 112-b. After allocuting the mother, the Family Court found that the mother knowingly, voluntarily, and intelligently executed the surrender. The court stated that if the "court down the road was not able to approve" the grandmother as the person to adopt LS, either parent had the right to return to court and "try to undo" the surrender.
On December 27, 2017, JCCA discharged LS, now 13 years old, to her grandmother's care. The grandmother could not provide the necessary care to LS due to LS's significant behavioral challenges, and returned her to Edenwald on February 13, 2018, a little under two months later[*3]. The grandmother stated that she no longer wished to adopt LS. On May 23, 2018, in compliance with the surrender's terms, JCCA filed a petition to review the grandmother's decision:
"Petitioner requests that this Court enter an order that the Conditional Judicial Surrenders to the Child, executed [by the mother] on October 30, 2017 . . . remain in full force and effect notwithstanding the substantial failure of a material condition of the surrender, and the Guardianship and Custody of the Child remain committed to an authorized agency . . . ."
The parties appeared before the same Family Court Judge who had conducted the allocution. The court noted that "we are here really for quite an unfortunate situation" and stated that the purpose of the hearing was to determine "whether notwithstanding the failure of the necessary condition, the court needs to continue the termination meaning that [LS] remains free for adoption or whether it's in her best interest to no longer continue that freeing order." The mother's counsel argued that a hearing was not necessary, and that the Family Court must revoke the mother's surrender and declare it null and void because the grandmother no longer wished to adopt LS, which was a failure of a material condition. The court rejected counsel's argument, and set the matter down for a hearing to determine whether it was in the child's best interests to remain free for adoption. The Family Court adjourned the matter to August 10, 2018 for a hearing. At that time, LS would have been in foster care and youth facilities for nine years.
The Family Court conducted a best interests hearing commencing August 17, 2018. At the hearing's conclusion on October 14, 2018, the mother's counsel argued again that the hearing was unlawful because the Family Court should have revoked the mother's surrender, restored her parental rights, and continued the termination of parental rights proceeding. JCCA did not respond to the mother's counsel's arguments. Instead, based on LS's pressing personal circumstances, JCCA urged the Family Court to convert the mother's conditional judicial surrender to an unconditional one because that disposition would be in LS's best interests. The AFC, in support of JCCA, argued that there was no binding precedent supporting the mother's legal arguments, and that during the allocution the Family Court warned the mother that restoring her parental rights was not a guarantee even if the adoptive resources failed. Again, the Family Court rejected the mother's arguments. Family Court then made the following poignant findings:
"There is no one who can tell this court that this young lady does not deserve a chance. Her chance after growing up in foster care, this is a child who entered the foster care system and never left. She has been in foster care since 2009. There is no one who could tell this court that this young lady does not deserve a chance for a permanent, loving, adoptive home. [The mother] sought this hearing [*4]to have her rights reinstated however, the court even questions why she sought such hearing. [The mother] even today . . . nine years after her daughter first entered foster care, nine years, even today [the mother] did not articulate any kind of plan whatsoever for her ability to care or her child and at the very most, indicated that she wanted to have day visits and possibly overnight visits. Even today, after nine years of this child being in foster care this court has heard testimony that at most [the mother] has made 30 percent of the visits. Even today, after nine years where [LS] grew up in foster care, [the mother] admitted that, knowing that every time she missed a visit her daughter fell apart and we are not talking fell apart in a small way. We are talking about a young lady who gets so disappointed and so distraught that a person she continues to love and hopes to trust lets her down again and again and again, that she turns to threats of self-harm, that she decompensates that she needs extra therapeutic assistance. Even today after nine years in foster care [the mother] does not in the least understand her daughter, understand[] her daughter's needs or understand the actual harm she commits time and time again by telling her kid she's showing up when she doesn't. The notion that today on the stand [the mother] is asking to have her parental rights reinstated is based on wanting to have a day visit or an overnight visit, that is so contrary to what the law would require, that is so contrary to what is in the best interest of a child, that is so contrary to what a reasonable planning parent would say or do. But [the mother's] actions have made clear that what she said on the stand is what she means. Because [the mother] has visited 30 percent of the time. Because [the mother] has taken not a single step to plan for her daughter and this kid deserves a chance. She deserves a chance for a permanent, loving parent who will always be there for her no matter what her issues are, no matter what her problems are. Who will not miss a meeting, who will not miss a visit, who will be there for her in good and bad. She needs a parent for the rest of her life."
In making these findings, the Family Court acknowledged the emotional toll that LS has endured. The court then found by clear and convincing evidence that LS's best interests supported the conclusion that the mother's parental rights remain terminated. Accordingly, the Family Court converted the mother's conditional judicial surrender to an unconditional one, and permitted LS to remain free for adoption.
On appeal, the mother argues that Social Services Law § 383-c[6][c] does not mandate a best interests hearing upon the substantial failure of a material condition, and that the Family Court should have granted her application to revoke her surrender based on the grandmother's failure to adopt LS. JCCA and the AFC argue that LS's plight — she has spent virtually her in entire life in foster care [*5]and facilities for troubled youths — and that a second expectant familial adoption [FN2] should compel us to affirm the Family Court's disposition and allow LS to remain free for adoption. In the alternative, the AFC argues that the termination of parental rights proceedings against the mother be restored, and that such proceeding be promptly resumed and completed in an expedited manner. In considering these arguments, we are mindful of LS's personal difficulties and challenges, which were accurately and meaningfully described by the Family Court. We agree with the parties that the grandmother's declination to adopt LS is a substantial failure. We are asked to determine the difficult question as to the proper disposition given these facts.
JCCA's reliance on Matter of Crystalyn P. (40 AD3d 650 [2d Dept 2007], lv denied 9 NY23d 807 [2007]) and Matter of MP (50 Misc 3d 678 [Family Court, Kings County 2015]) to support its argument that the Family Court's disposition was proper is unavailing. Crystalyn P. provides no guidance as to the proper disposition upon a substantial failure of a material condition. The Second Department without any recitation of the underlying facts summarily held that the Family Court properly denied the biological mother's petition to revoke her surrender "[u]nder the circumstances of this case" (40 AD3d at 650). In MP, the Family Court held that it had authority to revoke the surrender when the designated adopting person declines to adopt, but that a hearing was necessary to determine whether revocation was in the best interests of the child (50 Misc 3d at 689). That finding that a best interests hearing was necessary is not persuasive.
The legislature enacted section 383-c of the Social Services Law in 1990 to provide for new procedures for the surrender of a foster child to an authorized agency so as to free the child for adoption. The law, however, lacked the dispositional alternatives for the conditional judicial surrender in the event of a substantial failure of a material condition prior to finalization of the adoption. That oversight was corrected by Matter of Christopher F. (260 AD2d 97 [3d Dept 1999]). There, the petitioner, the child's biological mother, and her husband executed a surrender stipulating that the child would be adopted by a specific couple, and that the couple would allow the child ongoing contact with his biological family after the adoption. A few months later, the couple refused to adopt the child. After a hearing, the Family Court, inter alia, denied the petitioner's claim for revocation of the judicial surrender despite the substantial failure of the condition that the couple adopt the child.
The Appellate Division, Third Department reversed. It held that the child's adoption by the couple was a condition precedent of the surrender instrument, upon which its failure permitted the petitioner, upon her prompt application, to revoke it (id. at 101). The Christopher F. court found that the Family Court [*6]misconstrued Social Services Law § 383-c, reasoning that to assume that the legislature did not intend for the biological parent to have any recourse against the substantial failure of a material condition of the conditional surrender was not logical in view of the fact that the statute allowed the biological parents to surrender their child on the condition that the child be adopted by a particular person and gave the biological parents the right to notice when that condition failed (id. at 99- 100).
Although amending section 383-c[6][c] in 2002 to provide for a procedure to notify the birth parents where there has been a substantial failure of a material condition contained within a conditional judicial surrender, the statute still did not indicate what, if anything, birth parents may do when faced with such a failure. In Matter of Bentley XX (Eric XX.) (121 AD3d 209 [3rd Dept 2014]), the biological father agreed to surrender his custody rights to the child on the condition that the maternal grandfather and his spouse would adopt the child. After the father executed the conditional judicial surrender and before the adoption was finalized, the couple separated leaving only the maternal grandfather willing to adopt the child (id. at 210). The father would not consent to a modification of his surrender to permit only the maternal grandfather to adopt the child. After a best interests hearing, where the biological father requested that the conditional surrender be revoked, the Family Court denied the father's application, and modified the conditional surrender to allow the maternal grandfather to adopt the child.
The Appellate Division, Third Department, reversed. It held that the Family Court should have granted the father's motion to revoke his surrender because there had been a substantial failure of a material condition, namely, that the couple, together, adopt the child (id. at 212). The Third Department noted that revocation continued to be a permissible disposition in a situation where the designated adoptive individual declines to adopt the child because the legislature did not disapprove of it, particularly in view of the fact that the legislature had the benefit of the holding in Matter of Christopher F. when it amended section 383-c[6][c] (id.). The Third Department reasoned that because the legislature is presumed to be aware of existing case law it implicitly approved the holding in Christopher F. because the "statutory amendments did nothing to abrogate or replace the relevant portions of [the] holding in Christopher F." (id. at 214).
JCCA passionately argues that LS's nine-year ordeal is a significant factor that cannot be ignored, and that fact alone should compel us to depart from the Third Department's holdings. JCCA points out that the mother's surrender of LS would remain in place, and she would remain free for adoption. This result would provide her with the chance of achieving her ultimate goal of permanency. Although it recognizes [*7]LS's interests, JCCA's argument gives insufficient weight to her mother's. We must balance LS's emotional and psychological needs and desire for permanency, with LS's mother's pursuit to have her parental rights restored. Describing this dilemma as merely a catch-22 would be an understatement.
We fully understand that under the totality of the circumstances there was a compelling need for the Family Court to expeditiously resolve this matter. Moreover, we agree with the essence of the Third Department's analysis that an adoption by the designated party is a condition precedent to a birth parent's conditional surrender. Upon the failure of that condition precedent, the parent's prompt application to revoke the conditional surrender must be granted. Here, the language in the mother's surrender could not be clearer — the condition precedent to her surrender of her parental rights was the grandmother's adoption of LS. This condition precedent — the designation of an adopting party — is a fundamental one, separate and apart from section 383-c(6)(c)'s other material conditions. We need look no further than the language of SSL § 383-c(6)(c) to support our position. That subdivision provides, in relevant part, that:
"[i]n any case in which the authorized agency determines that the persons specified in the surrender will not adopt the child or in any other case of a substantial failure of a material condition prior to the finalization of the adoption of the child, the agency promptly shall notify the parent thereof . . . ."
Clearly, the legislature singled out the adopting party's declination as a stand-alone material condition. Otherwise, it could have simply relied on the disjunctive catchall phrase to accomplish the same objective. By so choosing, the legislature signaled its intent to treat declinations as paramount to all other material conditions (see McKinney's Cons Laws of NY, Book 1, Statutes § 144 [the first canon of statutory construction is that there are no meaningless or futile statutory provisions and that every provision has an intended useful purpose]). That said, we can discern nothing more fundamental than determining who would be a child's guardian. The grandmother's declination requires the mother's surrender, upon her prompt application, to be revoked. This revocation restores the parties to their original positions before the Family Court in order to continue and conclude the termination of parental rights proceeding against the mother.
Accordingly, the order of the Family Court, New York County (Karen L. Lupuloff, J.), entered on or about October 4, 2018, which, after a hearing, granted the petition to the extent of finding that the child's best interests warranted converting the mother's conditional surrender into an unconditional surrender, and denied respondent mother's application to revoke her conditional judicial surrender of parental rights should be reversed, on the law, without costs, the petition denied and dismissed[*8], and the mother's application granted and the matter remanded for an expeditious continued hearing on the agency's petition to terminate the mother's parental rights.
Order, Family Court, New York County (Karen L. Lupuloff, J.), entered on or about October 4, 2018, reversed, on the law, without costs, the petition denied and dismissed, and the mother's application granted and the matter remanded for an expeditious continued hearing on the agency's petition to terminate the mother's parental rights.
Opinion by Oing, J. All concur.
Gische, J.P., Oing, Moulton, Mendez, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 1, 2021



Footnotes

Footnote 1: The couple also have a son, D.A., born on January 4, 2004. D.A is not implicated in this appeal.

Footnote 2: LS's maternal aunt has come forward seeking to adopt her. JCCA cleared her in October 2019.